UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JASON SCHANKMAN,      )
                      )
      Petitioner,      )
                      )
      vs.             )     Case No. 4:08CV660 CDP
                      )
UNITED STATES OF AMERICA,  )
                      )
      Respondent.    )

## MEMORANDUM AND ORDER

Jason Schankman seeks to vacate, set aside or correct his sentence under 28

U.S.C. § 2255. Schankman is currently serving a sentence of 188 months

imprisonment following his guilty plea to two counts of receipt of child

pornography, one count of attempted production of child pornography, and one

count of production of child pornography. Criminal Case No. 4:05CR373 CDP.

He did not file a direct appeal.

For the reasons that follow, I conclude that the records before me

conclusively demonstrate that Schankman has no right to relief. Schankman

argues that his mental illness and medications rendered his plea and waiver of

rights involuntary and tolled his one-year statute of limitations period for filing

this motion. Schankman also claims that he received ineffective assistance of

counsel and challenges his sentence as violative of the Eighth Amendment.

Schankman, who has been represented by retained counsel throughout these proceedings, requests an evidentiary hearing on his claims. I have considered all the evidence that Schankman has put forward in support of his motion, including the testimony of his expert witnesses. After careful consideration of all the evidence, I must deny Schankman's motion without an evidentiary hearing for the reasons that follow.

<u>Background</u>

In 2004, Schankman communicated with "Pam" via the internet. Schankman believed "Pam" was a fifteen year old girl living in Chicago, Illinois. Actually, "Pam" was an undercover police officer. In his messages to "Pam," Schankman asked her to send him nude photos of her genitals. Schankman described the kinds of sexually explicit photos he wanted her to take, sent her adult pornography to show her the kinds of poses that he was talking about, and even sent her money to buy the film. After "Pam" told Schankman that she had taken the photos, he asked her to mail them to him at his office wrapped like a gift so they would not be opened by anyone else. "Pam" actually sent Schankman photos seized from another child pornography investigation. Schankman received the package, opened it, and viewed the photos. A federal search warrant was then executed on his workplace. Schankman agreed to voluntarily answer the federal

agents' questions, and he admitted asking "Pam" to take and send sexually explicit photos of herself to him.

During this same time period, Schankman also used the internet to communicate with a sixteen year old girl in Maryland. Schankman knew she was sixteen and asked her to take and send him nude photos of her genitals. As before, Schankman described the kinds of photos he wanted the girl to take and sent her adult pornography to illustrate the poses. The girl complied with Schankman's request and sent three photos of her genitals to Schankman via the internet.

In August of 2004, Schankman was also communicating with a fourteen year old Missouri girl over the internet. Knowing that she was fourteen, Schankman told the girl he wanted to have sexual intercourse and oral sex with her. Schankman twice picked the girl up and took her to the park, where he kissed her and put his hand under her skirt during one of these encounters.

On July 7, 2005, Schankman was indicted on two counts of receipt of child pornography, one count of attempted production of child pornography, and one count of production of child pornography. On July 19, 2005, Schankman's retained attorney filed a motion for psychiatric examination of Schankman. On July 25, 2005, the Court ordered the exam, which was performed by Dr. John Rabun. Dr. Rabun's report was filed with the Court on October 12, 2005.

On November 29, 2005, a competency hearing was scheduled before Magistrate Judge Thomas C. Mummert, III. The parties stipulated to the psychiatric report and waived presentation of further evidence. Judge Mummert held that "based upon the forensic report and the applicable law, the Court finds that the defendant does not suffer from a severe mental disease of defect and has the ability to understand the nature of the legal proceedings against him. The Court further finds defendant to be competent to assist in his own defense." The parties did not object to Judge Mummert's finding.

On January 13, 2006, Schankman pled guilty to all counts of the indictment. In the plea agreement, Schankman agreed that "in the event the Court accepts the plea, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all non-jurisdictional issues including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea." Schankman also agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."

On April 7, 2006, Schankman was sentenced to a total of 188 months in prison, which was within the guideline range and eight months above the statutory minimum of 180 months. Schankman did not appeal. On May 7, 2008, over two years after his sentencing, Schankman filed the instant § 2255 motion asserting the following grounds for relief:

1) Schankman's plea was not knowing and voluntary because of his mental illness and medications;

2) Enforcement of his waiver of post-conviction rights would be a miscarriage of justice;

3) The sentence of 188 months violates the Eighth Amendment;

4) Schankman received ineffective assistance of counsel;

5) The one year statute of limitations applicable to § 2255 motions should be subject to equitable tolling because of Schankman's mental illness and medications; and

6) Schankman is entitled to an evidentiary hearing on his claims.

*A. No Evidentiary Hearing is Required*

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the filed and records of the case conclusively show that he is entitled to no relief." Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). "No hearing is required, however, where

the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Id. (internal quotation marks and citation omitted). Here, I have considered all of the evidence put forward by Schankman in support of his claims, including the affidavits of Doctors James D. Reid and Robert Prentky, as well as the testimony from Schankman's father and wife. Despite this evidence, when I consider the file as a whole I find that Schankman's claims are inadequate on their face and conclusively refuted by the record. Reid's conclusory assertions of Schankman's inability to comprehend the statute of limitations are unsupported by any evidence, and parts of his testimony also contradict his prior testimony from the sentencing hearing. Although Prentky's testimony is slightly more comprehensive, I find that it, too, is heavy on conclusions without any underlying factual support and is entitled to no weight when I consider Schankman's claim that his guilty plea was invalid.

Similarly, the testimony from Schankman's family entitles Schankman to no relief. Schankman stood before me, under oath, and assured me that he and he alone was making the informed decision to plead guilty. Whatever influence Schankman's father may have believed he had on his son's decision to plead guilty, at the end of the day it was Schankman who decided to plead guilty of his own volition. At sentencing, Schankman presented evidence that he was

knowingly accepted responsibility for his conduct and was responding well to his

medication. He cannot disavow that evidence now. The motion is denied for the

reasons that follow.

        B.     *The § 2255 motion is untimely*

28 U.S.C. § 2255 states that "a one-year period of limitation shall apply to

motion under this section. The limitation period shall run from the latest of -- the

date on which the judgment of conviction becomes final . . . ." As stated above,

Schankman was sentenced on April 7, 2006. He did not file an appeal. Because

the instant motion was filed on May 7, 2008, well over a year after his conviction

was final, it is barred by the statute of limitations unless the statute was equitably

tolled. In my prior Order dated October 23, 2008 I denied the government's

motion to dismiss on this ground, holding that the facts pertinent to Schankman's

equitable tolling argument had not yet been sufficiently developed for me to

decide this issue. I have now reviewed all the evidence submitted by Schankman

in support of his equitable tolling argument and I find it insufficient to toll the

one-year limitations period.

Significant mental impairment can be an extraordinary circumstance

justifying equitable tolling of the AEDPA's statute of limitations. <u>See</u> <u>Nichols v.</u>

<u>Dormire</u>, 11 Fed. Appx. 633, 634 (8th Cir. 2001) (unpublished). The issue is,

however, fact specific. See id. In the context of an employment case, the Eighth Circuit Court of Appeals stated that "the standard for tolling due to mental illness is a high one." Lyons v. Potter, 521 F.3d 981, 983 (8th Cir. 2008). "A plaintiff seeking equitable tolling on the ground of mental incapacity must come forward with evidence that a mental condition prevented him or her from understanding and managing his affairs generally and from complying with the deadline that he seeks to toll.'" Id. (quoting Jessie v. Potter, 516 F.3d 709, 715 (8th Cir. 2008)).

In an attempt to meet this heavy burden, Schankman offers the testimony of Dr. James Reid, the same psychiatrist who testified on Schankman's behalf at the sentencing hearing. In his affidavit in this case, Reid opines that "Mr. Schankman's chronic and severe bipolar disorder rendered him mentally unable to realize the statute of limitations for § 2255." According to Reid, this is because Schankman's "use of multiple medications, as well as frequent changes of medicines" "had an incapacitating impact on Mr. Schankman's psychological condition and his ability to think clearly and make rational decisions." Reid's conclusory testimony, however, is unsupported by evidence and is contradicted by his sworn testimony from the sentencing hearing.

Schankman argues that his mental condition before the statute of limitations began to run is irrelevant to the issue of whether the statute should be equitably

tolled due to mental impairment. However, the parties agree that the one year

limitations period, if not equitably tolled, began to run on April 17, 2006, ten days

after Schankman's April 7, 2006 sentencing hearing. At that hearing Reid testified

as follows:

> ATTORNEY: Sir, based on your professional opinion have you
> noticed any changes in how Jason has been — how he's been
> handling this current legal problem and how his psychological
> disorders seem to be having been treated during this time period?

> REID: Yes. It's very clear he is responding well to medication. He is
> — his psychotherapy has been very beneficial for him. He has
> greater, much greater insight into the nature of his problem and how
> to manage symptoms than he did previously.

> * * *

> REID: Prior to his arrest, Jason was pretty psychologically immature
> and he may have been sort of drifting aimlessly in the world and that
> has changed significantly really in the past three months since I've
> been seeing him. He now sees very clearly a purpose in his life. He
> has a plan for the rest of his life. He has a plan to maintain treatment
> for his mental disorder and maintain medication management and
> psychotherapy as well as a real sense of purpose for the remainder of
> his life in terms of helping other people.

> * * *

> ATTORNEY: And your professional opinion with respect to Jason
> Schankman before the Court this morning, is Jason being properly
> treated?

> REID: It is my opinion he is being properly treated.

> ATTORNEY: And the correct diagnosis of Jason's bipolar disorder

and the initiation of the proper medication and treatment all started
approximately when?

REID: After his arrest.

Reid's affidavit is devoid of any explanation as to why Schankman suddenly

became "mentally unable to realize the statute of limitations for § 2255" only ten

days after Reid testified that he was responding well to medication, being properly

treated, and that he had a "plan to maintain treatment for his mental disorder and

maintain medication management and psychotherapy as well as a real sense of

purpose for the remainder of his life in terms of helping other people."  That

testimony is woefully inconsistent with an individual who is incapable of

"understanding and managing his affairs generally and from complying with the

deadline that he seeks to toll," Lyons, 521 F.3d at 983, particularly when I

consider the testimony at sentencing that Schankman was using his experiences to

help educate children about the dangers of sexual predators through creation of the

I-N-O-B-T-R program.

Schankman now argues that his "numerous medications" prevented him

from realizing the statute of limitations and points to the following testimony from

Reid's affidavit:

In the case of Mr. Schankman, the use of multiple medications, as
well as frequent changes of medicines, were likely to have affected

his ability to make rational and voluntary decisions that were in his best interest.

Once again, there is no evidence to support this conclusory statement.  As quoted above, Reid testified at sentencing that Schankman was responding well to his medication, that he was being properly treated, and that he was taking control of his life and his mental illness.  According to Reid, at sentencing Schankman was taking Depakote, Trazadone, Cymbalta, and Duloxetine.  The next medication change noted by Reid occurs on May 6, 2006, where Reid claims that Schankman is taking Bentyl[1], Prilosec (for his acid reflux)[2], and Depakote.  Reid then notes that Schankman is prescribed Valprosic acid on November 6, 2007, but that is after the statute of limitations period has already expired.  Reid does not explain how Prilosec – which Schankman told me at his guilty plea hearing that he took every day for his acid reflux – and the addition of an antispasmodic drug for the treatment of irritable bowel syndrome could render Schankman unable to comply with the one-year limitations period.  Moreover, there is no explanation as to what, if any, dosage changes or potential drug interactions may have caused Schankman

---

[1]According to the Physician's Desk Reference, 52nd Ed. 1998 (page 1198), Bentyl is an antispasmodic drug prescribed for the treatment of functional bowel/irritable bowel syndrome.

[2]Schankman told me during his plea colloquy that he was taking Prilosec, so I do not consider that a "new" medication that was prescribed to him.

such a significant mental impairment so as to justify equitable tolling of the one-year deadline. Schankman is not entitled to equitable tolling of the one-year deadline merely because he was diagnosed with, and is being treated for, bipolar and personality disorders. Schankman was found competent and according to the testimony offered by Reid at sentencing, Schankman was responding well to treatment and medication. Without some evidence to demonstrate why his evaluation of Schankman's progress changed so drastically in such a short period of time, Reid's affidavit offers no support for Schankman's claim that the one-year period of limitations should be equitably tolled. Because Schankman did not file his § 2255 motion by April 17, 2007, the motion is untimely and must be dismissed.

C.   *Even if the § 2255 Motion Were Timely, It Fails on the Merits*

Even if Schankman's motion were not time barred, his claims still fail on the merits. As discussed below, the file conclusively refutes Schankman's arguments that his guilty plea was unknowing and involuntary because of his mental illness and medications, that enforcement of his waiver of post-conviction rights amounts to a miscarriage of justice, that his sentence violates the Eighth Amendment, and that he received ineffective assistance of counsel.

D.   *Ground 1: Schankman's Guilty Plea Was Knowing and Voluntary*

Schankman argues that his guilty plea was unknowing and involuntary because of his "history of mental illness and the cocktail of mood altering drugs that he was ingesting at the time of his plea." First, Schankman's guilty plea is not rendered invalid simply because he has bipolar and personality disorders and was being treated for his mental illness with medication at the time of his plea. Schankman "must overcome strong presumptions . . . of the voluntariness of his guilty plea based on his representations at the plea hearing." Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993). This is because "[s]olemn declarations in open court carry a strong presumption of verity." Smith v. Lockhart, 921 F.2d 154, 157 (8th Cir. 1990)(internal quotation marks and citation omitted). "To be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent," United States v. Martinez-Cruz, 186 F.3d 1102, 1104 (8th Cir. 1999), which means it must be made "with sufficient awareness of the relevant circumstances and likely consequences." Id. (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).

Although the standard to determine competency varies slightly from the "knowing and voluntary" inquiry during the plea colloquy, see Godinez v. Moran,

509 U.S. 389, 401 (1993),[3] I note that Schankman was examined by forensic psychiatrist Dr. John Rabun three months before his guilty plea and found competent.  Dr. Rabun concluded that "with reasonable medical certainty, [] Mr. Schankman has the capacity to understand the purpose of the proceedings against him and to assist properly in his own defense."   After reviewing Dr. Rabun's report, Judge Mummert held that "based upon the forensic report and the applicable law, the Court finds that defendant does not suffer from a severe mental disease or defect and has the ability to understand the nature of the legal proceedings against him.  The Court further finds defendant to be competent to assist in his own defense."   Neither party objected to Judge Mummert's findings.

At the plea hearing, I questioned Schankman extensively to ensure both that he was competent to proceed and that he was knowingly and voluntarily entering a guilty plea:

---

[3]The United States Supreme Court explained the difference between a competency inquiry and a "knowing and voluntary" inquiry during a plea hearing as follows:

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings.  The purpose of the knowing and voluntary, inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced .

Moran, 509 U.S. at 401, n.12 (internal quotation marks and citations omitted).  Schankman easily passes both tests.

COURT: Are you currently under the care of a doctor or psychiatrist for any reason?

DEFENDANT: Yes, I am.
COURT: Tell me what you're being treated for.

DEFENDANT: I am being treated for depression, bipolar, mainly.

COURT: What medications do you take on a regular basis?

DEFENDANT: I am taking Depakote.

COURT: What else.

DEFENDANT: Trazodone. There's a new medication I just started, I don't really know the name of it.

COURT: When did you start that?

DEFENDANT: Just this week.

COURT: How often do you take it?

DEFENDANT: Every day.

COURT: Aside from those medications, do you take any other medicines on a regular basis?

DEFENDANT: Yes. I take Prilosec, and I take another medication for upset stomach.

COURT: What's Prilosec for?

DEFENDANT: Prilosec is for acid reflux.

COURT: Aside from those prescription medications, have you taken any other medicines or drugs or drunk any alcohol in the last 24

hours?

DEFENDANT: No, I have not.

COURT: Do you understand what's going on here today and feel okay to proceed?

DEFENDANT: Yes, I do.

COURT: Now, before you added this new medication, how long had you been taking the other things?

DEFENDANT: Daily, ma'am.

COURT: But for how long a period, for a month, a year?

DEFENDANT: Well, I've been on medication, on different types of medication for the last couple of years.

COURT: What I'm trying to figure out is you've recently added a medication to your regimen, and I want to make sure that because that's new, it's not causing you to not understand what's going on or have any side effects that make it hard for you to concentrate or anything like that.

DEFENDANT: Ma'am, if I could ask my wife, she might know the name of it. Risperdal is another medication.

COURT: Okay. Well, do you think you're competent to proceed?

DEFENDANT: Yes, I do.

COURT: Do you understand you're not going to be able to come back later and say that you didn't understand what was going on here today because of these medications?

DEFENDANT: Yes, ma'am.

COURT: Does either counsel have any doubts as to the defendant's competence?

MR. ROSENBLUM: No, Your Honor. I've been representing Mr. Schankman for well over a year with regard to this matter, spoken to Mr. Schankman at length, his family and his wife, spoken to his doctors, and I have no problem indicating to the Court that he is competent.

MS. COSTANTIN: There was a psychiatric examination to determine he was competent.

COURT: I understand that. He has new medications. I wanted to be sure that you're both satisfied.

* * *

COURT: Has anybody threatened you or in any way forced you to get you to plead guilty?

DEFENDANT: No, Your Honor.

I then advised Schankman of the charges against him and of his rights (including what rights he would be giving up by pleading guilty), and he acknowledged that he understood. Schankman stated that he had reviewed the plea agreement and discussed it with his lawyer and that he understood and agreed with its contents. He acknowledged that he understood the elements of each of the crimes in the indictment and that he understood the penalties for those crimes, including the mandatory minimum sentence of fifteen years. Schankman stated that he understood he was waiving his appeal rights and his post-conviction rights,

except for claims of prosecutorial misconduct and ineffective assistance of counsel. Finally, Schankman admitted that the facts outlined in plea agreement and recited for the record were true. After that exchange, I again asked Schankman if his plea was knowing and voluntary:

> COURT: Mr. Schankman, in signing this document, and answering my questions here today under oath, you've told me enough for me to accept your guilty plea, but I haven't done that. I want to make sure you really want to go ahead and plead guilty to these charges. Is that — do you want to go ahead and plead guilty?
>
> DEFENDANT: Yes, I do, Your Honor.
>
> COURT: Is anybody forcing you or making you do this?
>
> DEFENDANT: No.
>
> COURT: You're doing it of your own free will?
>
> DEFENDANT: Yes.
>
> COURT: Do you believe you're guilty of the crimes you're pleading guilty to?
>
> DEFENDANT: Yes.
>
> * * *
>
> COURT: I will accept your guilty plea. I find that you are competent to enter this plea and you are entering it knowingly and voluntarily.

The foregoing establishes that Schankman was competent (because he had the ability to understand the proceedings) and that his plea was knowing and

voluntary (because he, in fact, understood the nature and consequences of his decision to plead guilty). Yet after assuring me that his medications did not affect his ability to knowingly and voluntarily enter a guilty plea, that he knew he could not later claim that he did not understand the proceedings because of his medication, that he understood what rights he would be giving up to plead guilty, and that he was entering his guilty plea of his own free will because he was in fact guilty, Schankman now seeks to disavow all of his sworn statements and argue that his mental condition and medications rendered his plea involuntary.

In support of his argument, Schankman offers the testimony of Dr. Robert Prentky, a psychologist who interviewed Schankman "for approximately three hours on January 23, 2009," which is more than three years after Schankman pled guilty. Prentky states that his role is to determine whether Schankman's plea was made voluntarily and knowingly by "offering an opinion as to [Schankman's] possible state of mind at the time of the plea and the circumstances surrounding the plea." I have considered Prentky's report and find it is entitled to no weight on the issue before me – namely, whether Schankman's guilty plea was knowing and voluntary – because it is too remote in time and speculative. Prentky's speculation about Schankman's "possible state of mind" three years before examining him does not undercut the evidence of record that Schankman's plea

was voluntary.[4]  Notably Reid -- Schankman's expert witness who examined him around the time of his guilty plea and who testified on his behalf at sentencing – does *not* opine that Schankman's guilty plea was unknowing and involuntary (presumably because to do so would contradict the testimony he gave at sentencing)[5].  The doctor who actually examined Schankman during the relevant time period concluded that he was competent, and Schankman's responses to my questioning indicated that he understood and accepted the nature and consequences of entering his guilty plea.

---

[4]Prentky admits that Schankman's medication change the day before his guilty plea did not render his plea invalid because "it is unlikely that the drug would have had a therapeutic effect after 24 hours."  However, he opines that it is significant because it indicates that Schankman was experiencing a high level of anxiety before his guilty plea.  This opinion does not change my conclusion that Schankman's plea was knowing and voluntary.  It is not surprising that Schankman would be anxious before admitting publicly that he was guilty of two counts of receipt of child pornography, one count of attempted production of child pornography, and one count of production of child pornography.  There is simply no evidence to demonstrate that Schankman's anxiety -- or the medication prescribed to control it – rendered him unable to appreciate the nature and consequences of his decision to plead guilty.

[5]Although Schankman quotes Reid's affidavit in the section of his brief arguing that his plea was invalid, Reid never actually testifies specifically about Schankman's mental state at the time he pled guilty or was sentenced. Instead, he avers that: "the use of multiple medications, as well as frequent changes of medicines, were likely to have affected his ability to make rational and voluntary decisions that were in his best interest"; "Schankman's chronic and severe bipolar disorder rendered him mentally unable to realize the statute of limitations for § 2255"; and "mind-altering drugs had an incapacitating impact on Mr. Schankman's psychological condition and his ability to think clearly and make rational decisions."  Reid's opinions regarding Schankman's mental condition during the statute of limitations period have been discussed and discounted above.  To the extent Schankman attempts to argue that Reid's affidavit also applies to Schankman's guilty plea, I reject it for the same reasons discussed above; namely, that it lacks specificity and contradicts his prior testimony.

The testimony of Schankman's father and wife do not alter my conclusion. As I stated at the beginning of my opinion, whatever influence Mr. Schankman now claims he exerted over his son, at the plea hearing Schankman assured me repeatedly that it was his decision to plead guilty. Schankman's own statements about the voluntary nature of his plea were supported by his father's testimony at sentencing. Mr. Schankman testified at sentencing about his son's independence of thought and action in the creation of the I-N-O-B-T-R program, and how Schankman intended to use the program to show his remorse over his actions and to use his past experiences to positively impact society. That testimony is inconsistent with present claims that medication and pressure from his father rendered Schankman incapable of understanding the nature and consequences of his actions, including his decision to plead guilty. Because the file and records conclusively demonstrate that Schankman's plea was knowing and voluntary, he is not entitled to relief on Ground 1 of his § 2255 motion.

      E.    *Ground 2: Enforcement of Schankman's Waiver of Post-Conviction Rights Would Not Amount to a Miscarriage of Justice*

Schankman next argues that even if he entered into his plea and waiver of post-conviction rights knowingly and voluntarily, I should still not enforce his

waiver because to do so would result in a miscarriage of justice. Schankman argues that he "was incompetent at the time of his plea," so his waiver of post-conviction rights should not be enforced. Schankman was not incompetent at the time of his plea. He was found competent by Dr. Rabun, whose findings were relied upon by Judge Mummert. Neither party objected to Judge Mummert's finding that Schankman was competent. To the extent Schankman is arguing that it would be a miscarriage of justice to enforce the waiver of post-conviction rights because he was suffering from mental illness, the record conclusively demonstrates that his waiver should be enforced.

Knowing and voluntary waivers of post-conviction and appellate rights are enforceable. DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000). However, such waivers do not apply to ineffective assistance of counsel claims. Chesney v. United States, 367 F.3d 1055, 1059 (8th Cir. 2004). In United States v. Andis, 333 F.3d 886, 891 (8th Cir. 2003), the Eighth Circuit held that even a knowing and voluntary waiver would not be enforced if to do so would result in a miscarriage of justice. The Court stated that waivers would not be enforced if the sentence was based on constitutionally impermissible factors, such as race. Id. However, the Court recognized "that these waivers are contractual agreements between a defendant and the Government and should not be easily voided by the

courts. As such, we caution that this exception is a narrow one and will not be allowed to swallow the general rule that waivers of appellate rights are valid." Id.

Here, in his plea agreement Schankman agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." At the plea hearing, Schankman told me that he had read and discussed the plea agreement with his lawyer before signing it, and that there was nothing in the agreement that he did not understand. I specifically reviewed Schankman's waiver of post-conviction rights with him as follows:

> COURT: The habeas corpus waiver, that's also — habeas corpus is a motion where you would come back later to me, not to the Court of Appeals, but to this Court and say that your rights had been violated, and it's often referred to as a 2255 or a post-conviction motion, and you're giving up your right to come back and file that kind of a motion as well, unless you later find out something that you believe is either prosecutorial misconduct or ineffective assistance of counsel. Do you understand that?

> DEFENDANT: Yes, Your Honor.

> COURT: Do you understand that with very limited exceptions, when I sentence you in this case, that sentence will be the final word, and you won't be able to come back to me or go to any other Court to get that sentence changed?

> DEFENDANT: Yes, I understand.

For the reasons I have already discussed, I find that Schankman was competent to enter a guilty plea and that he knowingly and voluntarily did so. I find that he also knowingly and voluntarily waived his post-conviction rights, and I reject Schankman's argument that his mental illness precludes enforcement of that waiver for the reasons I have previously stated. Because no miscarriage of justice would result if Schankman's waiver were enforced, I find that Schankman waived his rights to bring post-conviction claims, except for claims of ineffective assistance of counsel and prosecutorial misconduct.[6]

F.     *Ground 3: Schankman's Sentence Does Not Violate the Eighth Amendment*

Schankman contends that his 188 month sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "A sentence that is grossly disproportionate to the crime committed violates the Eighth Amendment's bar against cruel and unusual punishment." United States v. Weiss, 487 F.3d 1148, 1153 (8th Cir. 2007) (internal quotation marks and citation

---

[6]However, just as I have proceeded to consider the merits of Schankman's § 2255 motion despite it being time-barred, I will also proceed to consider his eighth amendment claim even though I find that Schankman validly waived his right to bring it.

omitted).  "Although this narrow proportionality principle applies to both capital sentences and terms of years, outside the context of capital punishment, successful challenges to the proportionality of particular sentences are exceedingly rare."  Id. (internal quotation marks and citations omitted).  "A sentence within the statutory limits is generally not subject to Eighth Amendment review."  United States v. Atteberry, 447 F.3d 562, 565 (8th Cir. 2006) (internal quotation marks and citation omitted).  In considering whether a sentence is unconstitutionally disproportionate to a crime, "we first address the gravity of the offense compared to the harshness of the penalty."  Ewing v. California, 538 U.S. 11, 28 (2003).

Schankman's crimes are undoubtedly serious.  He used the internet to solicit two minors to take sexually explicit photographs of themselves and send those photographs to him.  Schankman met a fourteen year old girl on the internet, told her he wanted to engage in sexual intercourse and oral sex with her, and actually met her twice and engaged in sexual contact.  The mother of his fourteen year old victim addressed the Court at sentencing and described the enormous harm Schankman had caused her daughter and her family.  Given the gravity of his offense, I find that Schankman's sentence is not grossly disproportionate and does not violate the Eighth Amendment.  I sentenced Schankman within statutory limits to 188 months imprisonment, a sentence which was eight months above the

statutory minimum sentence and at the bottom of the Sentencing Guidelines range.

Schankman's sentence "is not the rare case in which a threshold comparison of the

crime committed and the sentence imposed leads to an inference of gross

proportionality." Ewing, 538 U.S. at 30 (internal quotation marks and citation

omitted). Even if Schankman had not waived his right to bring this claim, Ground

3 of his § 2255 motion nevertheless fails.

G.   *Ground 4: Schankman Did Not Receive Ineffective*
     *Assistance of Counsel*

Schankman argues that his attorney rendered ineffective assistance of

counsel because he failed to explain Schankman's options or the implications of a

guilty plea, present accurate and complete medical and medication information at

the time of the hearing, and inform him of his rights to appeal or to bring a § 2255

motion. Schankman also argues that his attorney coerced him into pleading guilty.

The Sixth Amendment establishes the right of the criminally accused to the

effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686

(1984). To state a claim for ineffective assistance of counsel, Schankman must

prove two elements of the claim. First, he "must show that counsel's performance

was deficient. This requires showing that counsel made errors so serious that

counsel was not functioning as the counsel guaranteed the defendant by the Sixth

Amendment." Id. at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. Second, Schankman "must show that the deficient performance prejudiced the defense." Id. at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of guilty pleas, a movant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997). The court need not address both components if the movant makes an insufficient showing on one of the prongs. Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995).

Schankman's allegations are conclusively refuted by his sworn statements made under oath at the plea hearing:

COURT: Now you are here today of course with Mr. Rosenblum. Have you had enough time to discuss your case with him?

DEFENDANT: Yes, I have.

COURT: Are you satisfied with his representation of you?

DEFENDANT: Yes, I am.

COURT: Is there anything you've wanted him to do in representing you in this case that he has failed or refused to do?

DEFENDANT: No.

As I have previously discussed, Schankman told me under oath that he had reviewed his plea agreement with his attorney and that he understood and agreed with it. Schankman's plea agreement sets out his waiver of appellate and post-conviction rights, which I also reviewed with him. Schankman also swore that he had not been threatened or coerced into pleading guilty. At the plea colloquy, I reviewed with Schankman the implications of pleading guilty instead of going to trial, and he affirmed that he understood that he was waiving those rights. Schankman cannot contradict his sworn statements made during the plea hearing, so his claims that his attorney failed to apprise him of his rights and the implications of pleading guilty and that he coerced him into pleading guilty must fail.

Schankman's claim that counsel was ineffective for failing to present accurate and complete medical and medication information at the time of the plea hearing is really just another attempt to argue that Schankman was incompetent.

Schankman has not demonstrated either deficient performance or prejudice resulting from this alleged error because the record conclusively demonstrates that Schankman was, in fact, competent to plead guilty and did so knowingly and voluntarily. As a matter of law, counsel cannot be ineffective for failing to make a meritless argument. Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994). For these reasons, Ground 4 of Schankman's § 2255 motion fails.

H.    *I Will Not Issue a Certificate of Appealability*

As Schankman has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

I.    *Conclusion*

When Schankman thought it would benefit him at sentencing, he presented extensive evidence that his mental illness was being successfully treated, that he was responding well to his medication, that he accepted full responsibility for the consequences of his actions, and that he was finally in control of his life with a plan to help others learn from his mistakes. Now that he is imprisoned,

Schankman is trying to present an entirely different story, again in hopes that he will benefit. He will not. Schankman was competent at his plea, competent at sentencing, and is competent now. Schankman knowingly and voluntarily pled guilty, waived his appeal and post-conviction rights, and let his § 2255 statute of limitations lapse. He was sentenced within statutory limits at the low end of the guideline range and must serve his time.

For all the reasons stated above, Schankman's §2255 motion will be denied.

**IT IS HEREBY ORDERED** that Jason Schankman's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Schankman has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of November, 2009.